## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES,<br><br>    Plaintiff,<br><br>    v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas; RUTH HUGHS, in her official capacity as Texas Secretary of State;<br><br>    Defendants. | Case No. 1:20-CV-1024-RP<br><br>Related to:<br><br>*Texas League of United Latin American Citizens v. Abbott*, No. 1:20-cv-1006<br><br>*Straty v. Abbott*, No. 120-cv-1015 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

STATEMENT OF FACTS ............................................................................................................. 3

    A.   Evidence of Burden ............................................................................................................ 4

    B.   The October 1 Order's Lack of Justification and Likely Impact ....................................... 6

LEGAL ARGUMENT .................................................................................................................... 7

I.    Plaintiff Is Likely to Succeed on the Merits of Its First and Fourteenth Amendment Claim of a Violation of the Right to Vote ............................................................................................. 8

II.   Plaintiff Is Likely to Succeed on Its Equal Protection Claim ................................................. 9

CONCLUSION ............................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Celebrezze*,
　460 U.S. 780 (1983) ............................................................................................................. 1, 8

*Burdick v. Takushi*,
　504 U.S. 428 (1992) ............................................................................................................. 1, 8

*Bush v. Gore*,
　531 U.S. 98 (2000) ..................................................................................................................... 9

*Common Cause Ind. v. Marion Cty. Election Bd.*,
　311 F. Supp. 3d 949 (S.D. Ind. 2018) ...................................................................................... 8

*Ga. Coal. for People's Agenda, Inc. v. Kemp*,
　347 F. Supp. 3d 1251 (N.D. Ga. 2018) .................................................................................... 8

*League of Women Voters of Fla., Inc., v. Detzner*,
　314 F. Supp. 3d 1205 (N.D. Fla. 2018) .................................................................................... 8

*Mich. State A. Philip Randolph Inst. v. Johnson*,
　833 F.3d 656 (6th Cir. 2016) ...................................................................................................... 9

*Norman v. Reed*,
　502 U.S. 279 (1992) ..................................................................................................................... 8

*Richardson v. Tex. Sec'y of State*,
　No. SA-19-cv-963-OLG, --- F. Supp. 3d --, 2020 WL 5367216 (W.D. Tex.
　Sept. 8, 2020) ............................................................................................................................... 8

*Straty v. Abbott*,
　No. 1:20-cv-1015-RP (W.D. Tex.), ECF No. 22 ...................................................................... 7

*Texas League of United Latin American Citizens v. Abbott*,
　No. 1:20-cv-1006-RP (W.D. Tex.), ECF No. 15 ...................................................................... 7

**Other Authorities**

U.S. Const. amend. XIV ............................................................................................................. 1, 8

U.S. Const. amend. I ....................................................................................................................... 1

## INTRODUCTION

With little justification and at the last minute, Governor Abbott has precipitously upended the voting plans of tens of thousands of Texans in the midst of a pandemic. Under the vague banner of "enhancing ballot security," the Governor has ordered that county election officials may only maintain one drop box location for absentee ballots per county. This imposes an undue and unjustified burden on the fundamental right to vote, and disproportionately affects voters in large counties with significant minority populations that were expected to vote absentee in large numbers. The Texas State Conference of NAACP Branches ("Texas NAACP"), on behalf of itself and its members expected to be adversely affected by the Governor's October 1 Order, seeks to enjoin the Governor's order and return to the status quo, which allowed county election officials in Texas to offer multiple drop-off locations to Texas absentee voters.

Texas NAACP seeks a preliminary injunction to return to the status quo on two grounds. First, the October 1 Order unconstitutionally burdens the fundamental right to vote under the First and Fourteenth Amendments, and fails the balancing test set forth in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). Second, the October 1 Order violates the Equal Protection Clause of the Fourteenth Amendment by disadvantaging Texas voters who live in geographically dispersed and more populated counties in favor of those who live in smaller and less populated counties.

The COVID-19 pandemic has caused election officials across the country to explore alternatives to in-person voting on election day, including by expanding voting by mail, adding polling and drop-off locations, and extending early voting. In July Governor Abbott seemed to join in this effort by extending early voting and suspending a statute that only allowed absentee ballots to be dropped off on election day. The Governor's October 1 Order alters the status quo he created, a little over a month before the November 3 election, even though voters had already

started returning absentee ballots. Harris County had already designated eleven drop-off locations as well as NRG Stadium and Travis County had designated four such locations.

For many voters who will vote by mail, the nearest drop-off location will now be dozens of miles away, forcing those voters to travel unreasonably long distances or to put their ballots in the care of the overburdened United States Postal Service, which has explicitly informed Defendants that Texas election mail will be delayed. This effort to restrict Texas voters' access to voting during the pandemic imposes a significant, unjustifiable burden on voting and must be immediately enjoined. In the midst of an ongoing election, changing the status quo and forcing such new burdens on voters who relied on a different set of election rules to make their voting plan is unreasonable, unfair, and unconstitutional. And, as Governor Abbott and other state officials have acknowledged on the record in other voting cases, last-minute changes to voting procedures engender voter confusion and undermine public confidence in the election itself.

As of October 6, Texas has seen nearly 770,000 confirmed COVID-19 cases with more than 16,000 fatalities. Texans age 65 and older – precisely one of the categories permitted to vote by absentee ballot in Texas – constitute approximately 70% of those fatalities, despite that group making up less than 13% of the state's population. These figures are not surprising: before the novel coronavirus even touched U.S. soil, epidemiologists warned that people above 65 and those with certain underlying heath conditions are particularly vulnerable to COVID-19's most severe consequences.

In addition, and crucially, the October 1 Order disproportionately disadvantages African-American voters in Texas, because African-American voters are more likely to live in poverty and less likely to own a vehicle than other populations. The existence of only a single ballot drop-off location in each Texas county necessarily means that a significant proportion of each

county's African-American voters who do not live near the single permitted location will face greater burdens to exercising their voting rights. The October 1 Order thus impedes the Texas NAACP's mission of securing political equality for African-American voters in Texas.

The availability of multiple accessible drop-off locations is especially crucial in counties with large populations. The U.S. Election Assistance Commission ("EAC"), an independent federal agency, currently recommends at least one drop-off location for every 15,000 to 20,000 registered voters. Harris County alone has over 2 million registered voters, and the Harris County Clerk has stated that he expects that seven to eight times more mail ballots will be requested for this November's election than in a typical general election. But Governor Abbott has ignored this EAC guidance, as well as his constituents' grave concerns, and needlessly chosen to prevent county officials from taking reasonable steps that are plainly required to protect vulnerable Texans' ability to vote in this election.

For all these reasons, the Governor's October 1 Order should be enjoined and the status quo prior to its issuance, allowing county election officials to designate and operate multiple drop-off locations, should be restored.

## STATEMENT OF FACTS

Plaintiff Texas NAACP, in support of its motion for a preliminary injunction, incorporates by reference the factual evidence offered by plaintiffs in the related cases, and in addition supplements the record with the expert report of Professor Daniel Chatman of the University of California, Berkeley regarding his analysis of travel burden and queuing times in some of the larger Texas counties resulting from the restriction of only one drop box per county, as well as the attached declarations of Ryan Robinson, who served as the City Demographer for the City of Austin from 1990 until retiring this summer, Dr. Howard Henderson, the Founding Director of the Center for Justice Research and a professor of justice administration in the

Barbara Jordan-Mickey Leland School of Public Affairs, and former McLennan County Election Administrator Linda Jann Lewis.

### A.     Evidence of Burden

Professor Chatman is an Associate Professor of City and Regional Planning at the University of California, Berkeley, and has taught undergraduate and graduate courses, and conducted research, in urban and regional transportation planning, transportation and land use planning, and research methods.  Chatman Decl. ¶¶ 1, 2.  He has published numerous peer-reviewed articles and has been qualified as an expert and rendered opinions regarding travel burden and queuing in at least two other voting rights cases, including one involving voter ID in Texas and one involving ballot drop-box restrictions in Wisconsin.  *Id*. ¶¶ 3-4.

Professor Chatman analyzed demographic and geographical data in several large Texas counties and concluded that Governor Abbott's October 1 Order "will place a substantial travel burden on absentee-eligible citizens of voting age without access to a vehicle who find it necessary to drop off their absentee ballots rather than mail them, particularly when looking at those who lack access to a personal vehicle in their household."  *Id.* ¶ 7.  This increased travel burden is particularly acute on the poor, who are more likely not to own a vehicle, and the disabled.  *Id*. ¶¶ 7, 9.  The burden is also not evenly distributed across the state, with a greater number of voters in the ten most populous counties suffering significantly higher travel burdens than counties in the rest of the state.  *Id*. ¶ 8.

In Harris County, in particular, "the largest county by population, which contains 30 to 45 percent of all travel-burdened voters in the state, the share of households with a travel burden exceeding 90 minutes is 7 times as high as the state average across counties, at about 13 percent of all absentee-eligible citizens of voting age."  *Id.* ¶ 8.  This is intuitive, as areas with denser population levels have more traffic.  Dr. Howard Henderson, the Founding Director of the

4

Center for Justice Research and a professor of justice administration in the Barbara Jordan-Mickey Leland School of Public Affairs, observes that the densest zip code in Texas is "77046" in Houston, which has approximately 32,343 residents per square mile, while many Texas counties have fewer than 1,000 residents.  Henderson Decl. ¶¶ 10-11.

The absentee ballot drop-off location reduction in Travis County is similarly harmful. Ryan Robinson, who served as the Austin City Demographer from 1990 until his retirement earlier this year, observes that the sole absentee ballot drop-off location in Travis County is located within the urban core of Austin.  Robinson Decl. ¶ 10.  Non-Hispanic Whites are heavily concentrated in the central portion of Travis County, in or near the center of Austin, while African-Americans and Latinos are concentrated in more distant areas of the county.  *Id.* ¶¶ 11-12.  Black communities in Colony Park, Springdale, Pflugerville, Heatherwilde, and Wells Branch, and Latino communities in Dove Springs, Montopolis, Riverside, Rundberg, and North Lamar will have a more difficult time travelling to the county's sole absentee ballot drop-off location.  *Id.* ¶ 9.

Professor Chatman conducted a racial analysis of the relative burden by race/ethnicity, focusing on Whites, African Americans, and Hispanics who are citizens and also eligible for absentee ballots due to age or disability.  Chatman Decl. ¶ 49.  He found a disparate racial impact; among Texas citizens eligible for absentee ballots, African Americans are twice as likely as Whites to have a round trip to access a ballot drop box location exceeding 90 minutes, at 14.6 percent in comparison to 6.7 percent for whites, largely because African Americans are far more likely to live in a household without a car available.  *Id.*  Hispanic citizens were somewhat more likely to experience a travel burden exceeding 90 minutes, with a rate of 8.3 percent across the state (24 percent higher than Whites).  These substantial racial disparities are particularly acute

5

for African American citizens in Harris County (17.1% must travel over 90 minutes, versus 11.4% of Whites) and in Travis County (13.9% must travel over 90 minutes, versus 7.7% of Whites).

With regard to his queuing analysis, Professor Chatman, using a conservative set of assumptions, concludes that, as a result of the October 1 Order, "queues would be intolerably long in dozens of the most populous counties, and many voters there would be forced to forgo depositing their ballots. The lines would be particularly burdensome in the top ten counties by population in the state (including Harris, Dallas, Travis, and Fort Bend Counties), with between 10,000 and 64,000 voters in each of those counties waiting for 15 hours or more to drop off their ballots, unless (more likely) being dissuaded from voting altogether." Chatman Decl. ¶ 13.

**B.     The October 1 Order's Lack of Justification and Likely Impact**

Declarant Linda Jann Lewis was the County Elections Administrator of McLennan County from 1992 to 1996. Lewis Decl., ¶¶ 2, 7. Ms. Lewis has also held numerous other positions in public service, including serving as a senior-level staff member for Governors Bill Clements and Mark White. *Id.* ¶ 6. Ms. Lewis states that absentee voting procedures and mechanics have not changed substantially since she served as a County Election Administrator and that she had absolutely no concerns about fraud or threats to election integrity when she oversaw the use of her office as McLennan County's site for the in-person return of absentee ballots on election day. *Id.* ¶¶ 8-11. Ms. Lewis never witnessed any evidence of voter fraud connected to returning mail-in ballots in person. *Id.* ¶ 11.

In Ms. Lewis's experience, while ballot security and election integrity are important goals, they are not a substantial impediment to operating drop-off locations for mail-in ballots. *Id.* ¶ 12. In her opinion, if County Election Administrators have decided to operate multiple locations, they have determined that doing so is the way to most efficiently distribute the burdens

of administering a high-interest presidential election in their county during the pandemic. *Id.* ¶¶ 12-13.  A ban on multiple drop-off locations thus places enormous stress on election administration staff, producing long lines and likely causing staff members to make mistakes because they are rushed and under time pressure.  *Id.* ¶ 14. These kinds of mistakes are much more likely to hurt the integrity of the election than non-existent ballot security issues.  *Id.*  Ms. Lewis expects that the October 1 Order will place election administration officials in large metropolitan counties under great stress and strain and engender chaos and confusion.  *Id.* ¶¶ 15-16.  She expects that voter fatigue and frustration will be widespread as a result and that many voters will be deterred from voting.  *Id.* ¶ 17.  Ms. Lewis notes that because most voters who apply for and complete mail ballots are 65 or older or have disabilities, the voters most likely to be impacted by the October 1 Order are also those most vulnerable to COVID-19 and least likely to vote in person on election day, and thus the most likely to be disenfranchised by the Order's disruption of the status quo.  *Id.* ¶ 18.

## LEGAL ARGUMENT

In support of a temporary restraining order and preliminary injunction on the fundamental right to vote and equal protection claims, Plaintiff Texas NAACP joins, relies on, and incorporates by reference the arguments of the *LULAC* Plaintiffs, *see Texas League of United Latin American Citizens v. Abbott*, No. 1:20-cv-1006-RP (W.D. Tex.), ECF No. 15, and of the *Straty* Plaintiffs, *see Straty v. Abbott*, No. 1:20-cv-1015-RP (W.D. Tex.), ECF No. 22, except as set forth below.[1]

---

[1] The Texas NAACP has organizational standing based on having to divert substantial resources from its normal activities in the wake of Governor Abbott's October 1 Order, and the Texas NAACP has associational standing to bring suit on behalf of its members.  *See generally* Declaration of Gary Bledsoe.

**I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS FIRST AND FOURTEENTH AMENDMENT CLAIM OF A VIOLATION OF THE RIGHT TO VOTE**

A State may not place any burdens on the right to vote that are not adequately justified by the State's asserted interests. *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick*, 504 U.S. 428. When considering challenges to state election laws that impact the fundamental right to vote, courts must "weigh 'the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Anderson*, 460 U.S. at 789.

The *Anderson-Burdick* framework is a "flexible" sliding scale, in which the "rigorousness of [the court's] inquiry" increases with the severity of the burden. *Burdick*, 504 U.S. at 434. When a state imposes a severe burden, strict scrutiny applies and any burdensome action must be narrowly tailored to advance a compelling state interest. *See id*. In this case, the burden imposed on voting is significant, requiring a showing by the State that its "interest [is] sufficiently weighty to justify the limitation." *Norman v. Reed*, 502 U.S. 279, 288-89 (1992); *see also Richardson v. Tex. Sec'y of State*, No. SA-19-cv-963-OLG, --- F. Supp. 3d --, 2020 WL 5367216, at *35 (W.D. Tex. Sept. 8, 2020) (same) (quoting *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009)).

"Disparate impact matters under *Anderson-Burdick*." *League of Women Voters of Fla., Inc., v. Detzner*, 314 F. Supp. 3d 1205, 1216 (N.D. Fla. 2018) (citing *Crawford*); *see also Common Cause Ind. v. Marion Cty. Election Bd*., 311 F. Supp. 3d 949, 968 & n.18 (S.D. Ind. 2018) (identifying the six-justice *Crawford* majority); *Ga. Coal. for People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1264 (N.D. Ga. 2018) (relying on "uncontested evidence of disparate impact on a particular class of individuals" in finding a severe burden under *Anderson-*

8

*Burdick*); *see also Mich. State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 666 (6th Cir. 2016). The substantial disparate impact in African Americans' travel times to the sole absentee ballot drop-off location statewide and in Harris and Travis Counties, *see* Chatman Decl. ¶¶ 49-50, tips the scales of Court's *Anderson-Burdick* analysis decisively in Plaintiffs' favor.

## II.   PLAINTIFF IS LIKELY TO SUCCEED ON ITS EQUAL PROTECTION CLAIM

"Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000). Here, additional absentee ballot drop-off locations had already opened in densely-populated Harris and Travis Counties. *See* Henderson Decl. ¶¶ 9-10, 13; Chatman ¶ 50. Shuttering these locations disparately burdens voters based on their county of residence and their race, which is "not consistent with [the State's] obligation to avoid arbitrary and separate treatment of the members of its electorate." *Bush*, 531 U.S. at 105.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court immediately enter an emergency restraining order preventing Defendants from enforcing the October 1 Order and, following an expedited briefing schedule and a hearing on the motion at the Court's convenience, preliminary enjoin Defendants from doing the same.


Dated:  October 7, 2020              Respectfully submitted,

                                     /s/ Robert Notzon_____
                                     Robert Notzon
                                     The Law Office of Robert Notzon
                                     1502 West Ave.
                                     Austin, Texas 78701
                                     robert@notzonlaw.com
                                     Phone: (512) 474-7563

                                     Nickolas Spencer

9

Spencer & Associates, PLLC
8403 Westglen Drive, Suite 2000
Houston, TX 77063
nas@naslegal.com
Phone: (713) 863-1409

Ezra Rosenberg*
erosenberg@lawyerscommittee.org
John Libby
jlibby@lawyerscommittee.org
John Powers*
jpowers@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Phone: (202) 662-8389
Fax: (202) 783-0857

John T. Montgomery*
john.montgomery@ropesgray.com
Deanna Barkett FitzGerald*
deanna.fitzgerald@ropesgray.com
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Phone: 617-951-7000
Fax: 617-951-7050

**Counsel for Plaintiffs**

**\* Pro hac vice motion forthcoming**